RECEIVED
USDC. CLERK, CHARLESTON, SC
2010 DEC 14 A 11: 04

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Heather C. Hoffman, ) | C. A. No. 9:08-0117-CWH-RSC |
| ) | |
| Plaintiff, ) | |
| ) | |
| -versus- ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Sheriff P. J. Tanner, Chief ) | |
| Deputy Michael Hatfield, Brian) | |
| Baird, Captain Toby McSwain, ) | |
| Master Sergeant Mike Riley, ) | |
| Isaac McDuffie Stone, III, ) | |
| Mike Dorman, and David Love, ) | |
| ) | |
| Defendants. ) | |

This civil rights action is brought by a pro se Plaintiff against forty-one defendants asserting deprivation of constitutional rights pursuant to the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution; conspiracy under 42 U.S.C. § 1985 to deprive Plaintiff of constitutional rights, including deprivation of Equal Protection based on gender and "victim/witness/informant of unlawful harassment"; conspiracy to advance or conceal constitutional deprivations under 42 U.S.C. § 1986; violation under 18 U.S.C. § 1961, known as Racketeering Influenced and Corrupt Organizations Act ("RICO"); and Intentional Infliction of Emotional Distress. Compl. at 16-17. The complaint appears to be based on allegations that a conspiracy exists between Plaintiff's former Wisconsin employer and the Defendants in this case, which give rise to her federal claims in this Court. Compl. at 18-27.

The seventy-six page complaint is organized into seventeen counts against various defendants. The pleading was reviewed pursuant to 28 U.S.C. § 1915(e)(2) and was given liberal construction as required for pleadings filed by a pro se litigant.

Nevertheless, the complaint was found to be wanting as to all defendants except Sheriff P. J. Tanner, Chief Deputy Michael Hatfield, Criminal Investigator Brian Baird, Captain Toby McSwain, Master Sergeant Mike Riley, Mark Dorman and David Lowe. See, Order, March 12, 2010 (Docket #44). The matter is now before the undersigned for a Report and Recommendation on a motion for summary judgment on behalf of the remaining defendants. (Docket # 47). The plaintiff has filed opposition to the motion, and the matter is now ripe for review.

### SUMMARY JUDGMENT STANDARD

Summary judgment should be granted when the record demonstrates that the requirements of Rule 56(c) have been met. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Where a case is "decided on summary judgment, there have not yet been factual findings by a judge or jury, and [the appellant's]

version of events ... differs substantially from [the appellee's,] ... courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the ... motion." Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1769, 1774 (2007) (internal quotation marks and alterations omitted).

Summary judgment is mandated where the party opposing the motion has failed to establish the existence of an element essential to his case, and on which he bears the burden of proof. Id., 477 U.S. at 322. The party seeking summary judgment must inform the court of the basis for its motion, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party, however, need not offer proof that negates the opponent's claim; rather, as to issues on which the party opposing the motion has the burden of proof at trial, the party seeking summary judgment need only point to an absence of evidence to support the opponent's claim. The party opposing summary judgment must then point to facts evidencing a genuine issue for trial. Fed. R. Civ. P. 56(c); see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

Summary judgment should not be denied merely because the plaintiff raises a "metaphysical doubt" as to the material facts. Mathushita Electrical Industrial Co., Ltd v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Likewise, "unsupported speculation is

3

not sufficient to defeat a summary judgment motion." <u>Felty v. Graves-Humphreys Co.</u>, 818 F.2d 1126, 1128 (4th Cir. 1987). If the plaintiff's evidence does not raise a genuine issue as to a material fact, then summary judgment is proper for the defendants. <u>See</u>, <u>Anderson</u>, 477 U.S. at 249-50 (where evidence is not significantly probative, then summary judgment is proper). Furthermore, even as to a material fact, an issue is genuine only where the record establishes that the fact-finder could find, by a preponderance of the evidence, that the plaintiff is entitled to judgment in his favor. <u>Id</u>., 477 U.S. at 252.

## **DISCUSSION**

The claims will be discussed separately as to each defendant. However there are some principles which apply to all defendants and are appropriately addressed at the outset.

First each defendant as part of his motion for summary judgments asserts that as sued in his official capacity he is an officer of the State of South Carolina and not amenable to suit under 42 U.S.C. § 1983 and is entitled to the same protections as the state under the Eleventh Amendment to the United States Constitution. These defenses are well taken. <u>See</u>, <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 109 S. Ct. 2304 (1999) and <u>Cf</u>. <u>Cromer v. Brown</u>, 88 F.3d 1315 (4th Cir. 1996); <u>Gulledge v. Smart</u>, 691 F. Supp. 947 (D.S.C. 1998). However each defendant is also sued in his individual capacity, therefore, the

4

issues raised do not end here.

Second, it is well-settled that in order for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights. Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977). General references to an organization or group to which a defendant may belong does not state a claim of personal involvement. Additionally, to state a § 1983 claim, a plaintiff must show that she suffered a specific injury as a result of specific conduct of a defendant, and an affirmative link between the injury and that conduct. See, Rizzo v. Goode, 423 U.S. 362, 371-372, 96 S.Ct. 598, 604 (1976). Further, vicarious liability theories such as respondeat superior are not available in § 1983 actions. Vinnedge at 928.

While there is a narrow exception to the respondeat superior rule such requires a showing that action or inaction by the defendant was affirmatively causally linked to some unconstitutional behavior in the sense that it could be characterized as supervisory encouragement, condonation, or acquiescence or gross negligence amounting to deliberate indifference, otherwise no liability reaches the defendant.

Accordingly, to the extent that the plaintiff relies on a respondeat superior theory or claim and does not allege personal involvement by a defendant and specific injury to herself, the

claim must fail.

### Sheriff P.J. Tanner

In the introductory paragraphs of the complaint, the plaintiff describes Sheriff Tanner as an elected official who is responsible for the actions of his department and his officers. (Complaint ¶ II B.). Tanner is next mentioned[1] in paragraph 120 of the complaint at which point the plaintiff asserts that any defense raised by Tanner in this action would be in violation of her constitutional rights. See also, ¶ 295. Again in paragraph 122 she alleges Tanner is responsible and liable for the "conspired overt commission of this specific action," for failing to take a report and investigate or refer allegations the plaintiff made to him.

In paragraph 259 the plaintiff asserts she forwarded a letter to Tanner, and in paragraph 261 the plaintiff asserts, "Plaintiff received a letter of response dated September 20, 2007, from Beaufort County Sheriff P.J. Tanner, alleging that the Beaufort County Sheriff's Department does not have jurisdiction to take any action on any and all of the aforementioned actions . . ." She asserts this was neglectful and violated her constitutional rights, as well as gave rise to other claims. See also, ¶¶ 263 & 281. Also the plaintiff complains that "Sheriff

---

[1] A PDF version of the complaint was searched by computer for the names of the remaining defendants in order to isolate the specific acts alleged to have been committed by each defendant.

P.J. Tanner's intentional failure and neglect to perform and/or train his personnel" was a violation of constitutional rights, a RICO violation and violation of state law. Finally in paragraph 295 the plaintiff reiterates her assertion that any defenses raised by Tanner would be a constitutional violation.

The plaintiff's complaints as to Tanner are conclusory consisting primarily of a recitation of constitutional rights and legal claims. They include allegations which sound in claims of respondeat superior. At best they are claims that he refused to investigate a claim made by the plaintiff because he concluded it was outside of his jurisdiction. Such fails to allege a constitutional violation, and fails to show that she suffered a specific injury as a result of specific conduct by Tanner.

### Chief Deputy Michael Hatfield

Chief Deputy Hatfield (Hatfield) is mentioned in three of the 302 paragraphs of the complaint. He is mentioned in paragraph C1 which is an identifying paragraph listing him as a party. He is mentioned in paragraph 119 as a law enforcement officer that the plaintiff consulted with, and in paragraph 259 as the person to whom she delivered a letter for Sheriff Tanner. It appears that she considers him as part of the conspiracy which prevented her claims from being investigated, but she fails to allege how he acted personally in the alleged deprivation of her rights or that she suffered a specific injury as a result of

specific conduct of Hatfield. "[U]nsupported speculation is not sufficient to defeat a summary judgment motion." <u>Felty v. Graves-Humphreys Co.</u>, 818 F.2d 1126, 1128 (4th Cir. 1987).

### Criminal Investigator Brian Baird

Criminal Investigator Brian Baird (Baird) is only mentioned in paragraph C-3 the identifying paragraph. There are no allegations elsewhere in the complaint concerning Baird and, therefore, the action should be dismissed as to him.

### Captain Toby McSwain

Captain McSwain (McSwain) is mentioned three times in the complaint. He is referenced in identifying paragraph C-2 and is listed in paragraph 119 as one of the officers the plaintiff consulted with in addition to Defendant Hatfield. He is mentioned for the third time in Paragraph 147 of the complaint which reads as follows:

> Captain Toby McSwain, Beaufort County Sheriffs Department, contacted Plaintiffs parents, Susan and Alfred Mantuano, in October of 2006, to complain about Plaintiffs insistence on having this matter investigated and to reiterate that his department has no jurisdiction to take a report, investigate and/or refer for investigation this specific cause of action. Captain McSwain told Mr. and Mrs. Mantuano that Plaintiff needed to return to Wisconsin for investigatory purposes. Captain McSwain threatened to have Plaintiff arrested if she persisted in petitioning the Beaufort County Sheriffs Department for a redress of grievances, pertinent to First Amendment rights, for deprivation of due process and equal protection and application of the laws, pertinent to her Fourteenth Amendment right, and gross, intrusive violation of privacy rights, pertinent

> to her Fourth Amendment rights, minus due process
> and equal protection of the laws.

Even accepting as true the plaintiff's allegation, since this is a motion for summary judgment and the allegation is not disputed by the defendant, it is well settled that verbal harassment and abuse by arresting officers, without more, does not rise to the level of a constitutional claim under § 1983. See, <u>Collins v. Cundy</u>, 603 F.2d 825, 827 (10th Cir. 1979), cited favorably in, <u>Moody v. Grove</u>, 885 F.2d 865 (4th Cir. 1989) (table) (unpublished). Only when a verbal threat is combined with action apparently designed to carry out the threat can it constitute a claim of constitutional dimension, <u>Hudspeth v. Figgins</u>, 584 F.2d 1345, 1348 (4th Cir. 1978), but no such circumstances have been established here.

Additionally, in this instance it is hard to see how the plaintiff even has a claim. The statements were allegedly made to the plaintiff's parents, and the parents were not threatened. There are no allegations of any threats to the plaintiff. Further even if the alleged statement were considered an indirect threat to the plaintiff, there is no evidence of any action designed to carry out the threat, and indeed there were many opportunities to arrest the plaintiff were McSwain inclined to do so. Finally there is no showing that the plaintiff suffered a specific injury as a result of the specific conduct of which she complains.

This action should be dismissed as to McSwain.

**Master Sergeant Mike Riley**

Master Sergeant Mike Riley (Riley) is referenced in introductory paragraph C-4 and paragraph 119 as one of the many defendants with whom the plaintiff consulted. Other than those paragraphs Riley is mentioned only one other time in the complaint. That is paragraph 210 in which Plaintiff asserts that Riley, "had a sworn, professional responsibility to take a report, investigate and/or refer for investigation this specific incident," and she apparently claims that his failure to do so violated her rights and was evidence of a conspiracy against her.

This does not allege a constitutional violation or any specific conduct on the part of Riley that violated the plaintiff's rights. Also it fails to show the plaintiff suffered a specific injury as a result of the specific conduct of which she complains. The defendants in this action do not constitute the plaintiff's private police force with an obligation to blindly pursue any and all claims reported by the plaintiff, and the defendant's failure to take a report, investigate or refer for investigation her complaints does not rise to the level of a constitutional violation.

This claim as to Master Sergeant Mike Riley should be dismissed.

### Mark Dorman

Mark Dorman (Dorman) is a supervisor of the South Carolina Department of Labor, Licensing and Regulation, and he is mentioned three times in the complaint, paragraphs C-6, 264 and 272. Paragraph C-6 is the identifying paragraph and specifically notes that Dorman is the supervisor of co-defendant Love. That allegation is repeated in paragraph 264 and further alleges that Dorman conspired with Love, Wild Wing Café and a John Doe to allow the plaintiff's child to work more hours than authorized by law. In paragraph 272 the plaintiff alleges that she had a written communication with Dorman.

These paragraphs fail to allege a violation of constitutional dimensions. They are conclusory and at best sound as if they are based on a theory of respondeat superior given the allegations that Dorman was Love's supervisor. As with other claims there is recited here no specific wrong on the part of Dorman that caused the plaintiff a specific injury.

This claim should be dismissed.

### David Love

David Love (Love) is an employee of the South Carolina Department of Labor, Licensing and Regulation, and he is referenced in paragraphs C-6, C-7, C-8, 264, 266, 269, 272, 273, 274 and 275. Of all the defendants in this matter, Love is the

one defendant who investigated the plaintiff's complaints and acted on them.

Love is mentioned in paragraphs C-6, C-7 and C-8. C-7 is the identifying paragraph regarding Love, and he is mentioned in C-6 as being supervised by Dorman. Love is mentioned in C-8, the identifying paragraph for former defendant Wild Wings, as a conspirator.

The gist of the plaintiff's claim against Love is set out in paragraph 270 of the complaint as follows:

> Plaintiff herein incorporates the aforementioned paragraphs and alleges that Plaintiff notified and informed via e-mail correspondence of September 9, 2007, state officer, David Love, Investigator, State of South Carolina Department of Labor, Licensing and Regulation, Office of Wages and Child Labor, of this second employer's, Wild Wing Cafe's, working Plaintiffs minor child outside of the workable hours of employment for a minor, between the ages of 14 and 15 years, on two separate occasions when a third party picked up her daughter from work. Mr. Love never confirmed with Plaintiff the validity of the information or that Plaintiff was the actual sender of the information prior to his full disclosure to Wild Wing Cafe of the name of the informant, the minor child involved, the relationship of the informant to the minor child, and sending a copy of the correspondence sent to Mr. Love to Wild Wing Cafe. All of these actions were initiated and acted on by Mr. Love without confirmation of the content of the correspondence having actually been sent by Plaintiff and/or permission and/or authorization to disclose Plaintiff's name and/or Plaintiff's minor child's name, and/or permission to copy Wild Wing Cafe on the information sent to Mr. Love by Plaintiff.

The plaintiff further elaborates in paragraphs 272, 273, 274, and 275, that as a result of her complaint and Love's investigation, Wild Wing Café was fined $300 all of which adversely affected her fifteen year old child's employment.

It is hard to see how this count gives rise to a constitutional violation although the plaintiff cites the First Amendment and an invasion of the personal privacy rights of her child under the Freedom of Information Act. Even at that, the plaintiff is not complaining about a harm done to her, but rather her fifteen year old child. Further the admitted facts are that she first revealed the information in an e-mail and then complains that her e-mail was acted on in a manner which she believes was inappropriate. Ironically, this is the exact opposite of the claims against the other defendants herein who are alleged to have violated constitutional rights because they did not act on her letters and entreaties.

Perhaps there is a novel federal claim herein which the court fails to perceive, but on these facts there does not appear to be a violation of a constitutional or other federal right or a resulting harm to the plaintiff by defendant Love. Accordingly this action should be dismissed.

### STATE LAW CLAIMS

This court may exercise supplemental jurisdiction over state law claims brought in conjunction with federal claims even though

those state law claims could not have been brought by themselves. 28 U.S.C. § 1367. However 28 U.S.C. § 1367(c) gives the courts substantial discretion to refuse to hear supplemental claims. One of the most common instances in which the court declines to hear supplemental claims is the instance in which the original federal claims have been dismissed. In such a case the supplemental claims are dismissed without prejudice.

Therefore it is recommended the court dismiss the supplemental claims herein without prejudice.

## CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that the defendants' motion for summary judgment on the federal claims herein be granted, that the court decline to exercise supplemental jurisdiction over the pending state claims and that they be dismissed them without prejudice, and that this action be ended.

Respectfully Submitted,

*Robert S. Carr*
Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina

December 14, 2010

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within **fourteen (14) days** of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).